## KELSEY *vs.* DURKEE and CASE.

What are fixtures, as between landlord and tenant, and what is personal property of the tenant and subject to the right of removal by the latter, at the expiration of the term.

Anything necessary to the use and enjoyment of the demised premises for the purposes intended by the parties must be implied, where it is not expressed in the lease.

Where a lease stated that the premises were demised to be used as a soda, saleratus and drug factory, with a steam engine and furnace; *Held* that this clause was designed to enable the tenants to introduce their engine, and the necessary vessels and apparatus into the building, and involved the right to make an opening in the wall, for that purpose, if necessary. And that the engine &c. not being fixtures, and so annexed to the freehold, the property must make its exit in the same way as it made its entry. An injunction to restrain the tenants from removing the property in that manner was therefore refused.

THE complaint in this action sought to restrain the defendants from removing an engine, boilers and other property from the premises lately occupied by them in Brooklyn. The plaintiff obtained a temporary injunction at the commencement of the action, with an order to show cause why the same should not be made perpetual. On the return of this order, the plaintiff amended his complaint, and the proceedings were thereupon adjourned; and at the adjourned day the motion was heard upon pleadings and affidavits, and the temporary injunction dissolved. From the order dissolving the injunction the plaintiff appealed to the general term.

Kelsey *v.* Durkee.

*Britton & Ely,* for the plaintiff.

*Charles Crary,* for the defendants.

*By the Court,* Brown, J.   The defendants are the tenants of certain premises situate upon Sedgwick street in the city of Brooklyn, of which the plaintiff is the landlord.   The lease bears date November 1st, 1859, and demises the premises, with the buildings thereon, to be used for the purposes of a soda, saleratus and drug factory and mill, and to use a steam engine and furnace therein, for the term of five years, reserving rent, but to cease and determine should the buildings thereon be destroyed by fire, or otherwise, during the term.   The defendants entered upon the demised premises and put up and erected therein a steam engine, pan, kettles and boilers, at their own expense, for the use of their trade and business.   It appeared from the affidavit of Robert Weeks and the affidavits of other witnesses, read by the defendants upon the motion for the injunction, that "He did the mason work for the defendants at the time the engine, boilers, pans, furnace, &c. were placed in the buildings upon the demised premises; that the brick work and masonry surrounding the boilers is not let into the walls of the building, nor is the same in any way connected with the walls, but is built entirely outside and independent thereof, except that the flue which carries off the smoke from the fires under the boilers is built into the chimney, which passes up the wall.   The masonry surrounding the boilers had five iron bolts running through the same and over the boilers, and which bolts passed through the wall and were held in their places by nuts on the opposite side of the wall, and were placed there to hold the masonry and boilers firm in their position, from which they were liable to be displaced by the expansive force of the heat employed about the same.   The furnace is placed across the end of the west wing of the building, and is not built into the walls thereof or connected with the same, except that at

the west end thereof a few bricks were run into the wall to give it strength, and for the same reason that bolts were placed through the masonry surrounding the boilers. There were also several iron bolts running through the top of the furnace like those over the boilers. The same went through the outer wall and were fastened by nuts and put through the wall in the same way, and for the same purpose, as those over the boilers. That the bolts had all been recently removed and the holes left thereby closed without injury to the same. That the pan was only set upon the furnace and could be removed without injury to the building, as the walls and masonry surrounding it were laid upon the ground. That the kettles referred to in the complaint were not let into the ground, but stand upon the surface of the ground." It also appeared that some of these vessels were introduced into the building through an opening made in the wall thereof, and some of them by removing some of the stone steps from the basement door, the common passage ways being too narrow to admit their entry. And to remove the same from the building by the same process would cause no injury to the building, because the openings could be closed and the steps replaced without injury to the buildings. On the 30th of August, 1860, the premises were mainly destroyed by fire, and the lease and the term for years ceased and terminated by that event; but the defendants retained the possession so far as to enable them to remove the articles and vessels to which I have referred. The complaint charged that the defendants had already removed the steam engine and three oval pans, through apertures made in the building, and were about to remove the residue of said erections in the same way, and prayed, amongst other relief, for an injunction, upon the ground that the said erections and articles were fixtures and a part of the freehold; and upon the further ground of the irreparable injury which would be done to the plaintiff's buildings.

No objection seems to have been made by the plaintiff to

Kelsey *v.* Durkee.

the introduction of the property and articles in question into the buildings by openings made in the walls, and by the removal of the stone steps leading to the basement. Indeed I do not see with what propriety the plaintiff could have made such an objection, in the face of the provision in the lease, that the premises were demised to be used as a soda, saleratus and drug factory, with a steam engine and furnace. This clause in the lease was doubtless designed to enable the defendants to introduce their engine and necessary vessels and apparatus. If the doors of the building were not sufficiently large to admit them, (and it is not claimed they were,) the building could not have been applied to the uses for which it was demised, except by doing what was done without objection—making an opening in the wall and closing it again. If the property were not fixtures, becoming annexed to the freehold, it must make its exit in the same way as it made its entry; for any thing necessary to the use and enjoyment of the demised premises for the purposes intended by the parties must be implied where it is not expressed.

The real question is upon the nature and character of the property sought to be removed. Was it personal property, or were the articles or fixtures annexed to a part of the freehold ? As between landlord and tenant I have no hesitation in saying that they were not fixtures. They were the personal property of the tenants and subject to their removal. I know of no rule of justice or reason by which the landlord can assert any title to the property. It never was his, and he contributed nothing to its creation. It was the property of the tenants, put upon the demised premises by them with the assent of the landlord, and for the consideration of the annual rent reserved in the lease. It can be removed without injury to the freehold, or prejudice to the landlord. The law of fixtures, between landlord and tenant, has been quite as often considered by the courts, of late years, as any other branch of the municipal law. Scarcely a judge but has examined and passed upon it; and there is hardly a volume

amongst the numerous volumes of reports published of late years, that does not afford an adjudication. The only principles involved in this appeal have been so repeatedly decided that I decline to refer to them further. If counsel will not take notice and submit to them, no argument of mine will be of any avail. The judge at the special term denied the motion, and the order should be affirmed, with ten dollars costs.

[KINGS GENERAL TERM, February 11, 1861. *Lott*, *Emott* and *Brown*, Justices.]