### GANS *v.* HUGHES.

*(City Court of Brooklyn, General Term.  June 22, 1891.)*

LANDLORD AND TENANT—INCIDENTS TO LEASE—WATER.
   A lease of a portion of certain premises "to be used as a bakery" includes the right to water as incidental and necessary to the business of a bakery; and the landlord, having permitted the lessee to connect the leased part of the premises with the water-main in the part not leased, will be enjoined from afterwards cutting off such connection.

Appeal from special term.

Action by Frederick Gans against James Hughes. There was a judgment for plaintiff, and defendant appeals.

Argued before OSBORNE and CLEMENT, JJ.

*Magner & Hughes*, for appellant.  *Julius Klamke*, for respondent.

OSBORNE, J.  By indenture bearing date October 20, 1887, defendant leased to plaintiff "all that certain store and the rooms in the rear thereof comprising the ground-floor, and the front part of the cellar of the premises known as 'No. 82 Berry Street,' to be used as a bakery for the term of three years

to commence on the first day of November, 1887," at the yearly rent of $360, "with the privilege to the party of the second part of renewing this lease for a further period of three years, at the yearly rental of four hundred and twenty dollars." The lease further provided that the plaintiff, the tenant, should, at his own expense, put in the part of the cellar thereby demised a first-class oven, of such dimensions as should be agreed on by the parties, keep the same in good condition, and leave it in the premises on the termination of the lease. Under this lease, plaintiff entered on the premises in October, 1887, and proceeded to build the oven in the cellar, as covenanted. It appears from the evidence that, while the oven was being built, and prior to November 1, 1887, when the demised term was to commence, plaintiff told defendant that he would need water in the bake-shop in the cellar, and defendant consented that plaintiff could connect the water-pipes from that part of the cellar which was not leased to plaintiff, but it must be done entirely at plaintiff's expense. Plaintiff testifies: "He [defendant] told me I could do what I liked to carry on my business." The plumber employed by plaintiff to make the connection also testified that he asked defendant, while in the cellar, "Is this where to put the pipe?" and defendant replied, "You know best; connect it right in the rear where the main pipe comes in;" and the connection was accordingly made. Plaintiff occupied the premises leased, including the water connection, through the original term of three years named in the lease, and, having availed himself of his option for the further term of three years as stipulated in the lease, continued his occupancy up to February 26, 1891, when defendant without any notice cut off the water supply in the cellar used as the bake-shop. Plaintiff reconnected said pipe; thereupon defendant again cut off the water. Plaintiff accordingly brought this action to restrain defendant from interfering with the water-pipes, and from cutting off the water supply. On the trial it appeared, and the learned trial judge has found, that water was necessary and incidental to the use of said cellar as a bakery, and that the city does not permit more than one connection of the water-main with one house. Plaintiff had judgment below for the relief sought, and defendant appeals.

The contention of the learned counsel for the defendant upon this appeal is substantially that the right to use the water connection in the cellar was not included in the lease, and that the permission from defendant to plaintiff to make the connection in the cellar was a mere license which defendant had a right to revoke at his pleasure. We do not think this contention can be maintained. Leases, like other agreements, are to be construed so as to carry out the intention of the parties. When premises are leased for an expressed purpose, everything necessary to the use and enjoyment of the demised premises for such expressed purpose must be implied where it is not expressed in the lease. *Kelsey* v. *Durkee*, 33 Barb. 410; McAdam, Landl. & Ten. 114. It follows, therefore, that when plaintiff leased the premises in question "to be used as a bakery" he acquired also such accompaniments and appurtenances as usually belong to and were necessary to enable him to carry on the bakery business. It appears here from the findings, supported by evidence, that water was necessary and incidental to the use of the cellar as a bakery; indeed, defendant seems to have conceded this, when in October, before the demised term began, and while the oven was being built, he consented to the water connection being made, only stipulating that plaintiff should bear the expense thereof. For defendant, at this late day, to seek to sever the water connection, is an interference with the same use of the premises for the purpose for which they were hired, and equity will intervene to prevent such interference.

We do not think that the numerous authorities cited by the learned counsel for the appellant, to the effect that a licensor has the right to revoke a mere license at his pleasure, have any bearing on the case now before us, for

the reason, as we have endeavored to show, that the water connection was not the subject of a license, but was an appurtenance of and implied in the lease itself. But, even if it was the subject of a license, it was attached to a valid grant of real property, and, being coupled with an interest, it could not be revoked during the existence of the 'grant. Wood, Landl. & Ten. p. 557. We are accordingly of the opinion that the judgment should be affirmed, with costs.